## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                              No. CR 09-1465 JB

TIMOTHY WILSON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion *in Limine* to Permit Testimony from Medical Provider Regarding Victim's Statement Pursuant to Fed. R. Evid. 803(4), filed June 7, 2010 (Doc. 64).  The Court held a hearing on June 17, 2010 and an evidentiary hearing on June 21, 2010.  The primary issues are: (i) whether the Court should find, pretrial, that Plaintiff United States of America can present hearsay statements of victim Jane Doe to witness Kathryn Barrett, a physician's assistant, pursuant to the hearsay exception in rule 803(4) of the Federal Rules of Evidence; and (ii) whether the Confrontation Clause of the Sixth Amendment of the United States Constitution, as interpreted by the Supreme Court of the United States in Crawford v. Washington, 541 U.S. 36 (2004), prohibits Jane Doe's out-of-court statements to Barrett.  Because the United States Court of Appeals for the Tenth Circuit has not restricted the use of the rule 803(4) hearsay exception in the case of minor-victim testimony, and because Jane Doe will be present to be cross-examined regarding her out-of-court statements to Barrett, neither the general hearsay prohibition nor the Confrontation Clause prohibit admitting Jane Doe's out-of-court statements through Barrett.

## PROCEDURAL BACKGROUND

This case involves alleged sexual abuse against minor victim Jane Doe by Defendant

Timothy Wilson, which allegedly occurred in August 2008 and during the period from December 2008 to February 2009. In preparation for trial, the United States disclosed that it intended to present Barrett's testimony, which would include two statements that Jane Doe made to Barrett in the course of the forensic examination that Barrett performed on Jane Doe on May 29, 2009. First, Jane Doe allegedly told Barrett "[m]y uncle [Wilson] touched me," while pointing to her vaginal area. Motion at ¶ 1, at 1. Second, Jane Doe stated, in reference to Wilson, that "[h]e touched me with his hand." Id. The United States filed this motion asking the Court to rule pretrial that the statements which Jane Doe made to Barrett are admissible pursuant to rule 803(4).

Wilson objects to the admission of this evidence, arguing that the rule 803(4) exception to the prohibition against hearsay evidence does not apply to Jane Doe's statements. He argues that the United States has failed to lay a necessary predicate for application of the 803(4) hearsay exception. He asserts that the United States has not shown that Jane Doe formed the necessary intent to seek diagnosis or treatment, and that, without such intent, the statements lack the necessary indicia of reliability to justify application of the 803(4) exception. Wilson's counsel also raised a concern that introduction of the out-of-court statements would violate Wilson's Confrontation-Clause rights.

In response to Wilson's concerns, the Court took evidence on the morning of Monday, June 21, 2010, to assist it in resolving the issues underlying this motion.[1] At the hearing, Jane Doe's mother, Brittanya Frank, testified that she took Jane Doe to have Barrett perform the examination,

_____

[1] Both parties wanted the Court to decide this issue before the trial started so that the parties could plan their trial strategy with full knowledge whether this evidence would be coming into the case. See Transcript of Hearing at 62:2-21 (taken June 17, 2010)(Gorence)("I believe I'm entitled to know . . . at the start of the trial if this is coming in."); id. at 65:1-7 (Rozzoni)("The issue is when we start in opening and we talk about a case it would be nice to know what the evidentiary rulings are, with this at stake.").

in part, out of a concern for the Jane Doe's health and well-being, but while being cognizant that the results of the examination might be used in a criminal prosecution.

> Q.   And what was your understanding of what that exam was going to be?
>
> A.   Just to, basically, make sure she's okay and for her to have tests done just as -- for, like, sexually-transmitted diseases, and also that it was part of the investigation that was happening in regards to that.
>
> Q.   What did you tell [Jane Doe] was the purpose of the exam?
>
> A.   Basically, that, and that she needed to be aware that -- just to make sure she's okay, and, you know, for what has happened to her, too, you know, that eventually we were going to go to court for it.  And that's what I had told her.
>
> Q.   Okay.  So you told her -- Tell me again.  You told her that it was to make sure that she was okay?
>
> A.   Yes.

Transcript of Hearing at 5:17-6:5 (taken June 21, 2010)("Tr.")(Rozzoni, Frank).[2]  Barrett also explained the purpose of her examination to Frank:

> Q.   Did Kathy explain to you what the exam was for?
>
> A.   Yes.  Just all of the stuff, like I said before:  To make sure she's okay, to have the sexually transmitted-diseases tests done, and also that if it were to go to trial, that that would be used for that.

Tr. at 7:9-13 (Rozzoni, Frank).  Frank understood that Barrett was a "specialist."  Id. at 10:18-23, 11:5-9 (Gorence, Frank).  Frank told Jane Doe that the examination "was an interview, but not part of an investigation."  Id. at 13:1-8 (Gorence, Frank).  Frank said: "My main concern was to make sure that she was okay."  Id. at 15:15 (Frank).  She also testified, however, that the examination occurred after initially taking Jane Doe to the police station.  See id. at 8:18-23 (Gorence, Frank).

---

[2] The Court's citation to the June 21, 2010 evidentiary hearing refers to a final partial transcript that Mr. Gorence asked the court reporter to prepare.

Jane Doe described Barrett as "the one that checked me when I went . . . [b]ecause I think she thinks that -- I think I have something in me." Tr. at 20:14-17 (Rozzoni, Jane Doe). <u>See</u> <u>id.</u> at 20:11-22 (Rozzoni, Jane Doe). Jane Doe did not identify another reason that Barrett checked her. <u>See</u> <u>id.</u> at 20:11-21:3 (Rozzoni, Jane Doe). Jane Doe knew that Barrett was a nurse. <u>See</u> <u>id.</u> at 21:4-11 (Rozzoni, Jane Doe). She did not recall anyone telling her why she was seeing Barrett. <u>See</u> <u>id.</u> 22-23:23-3 (Gorence, Jane Doe). Jane Doe did not recall going to the police station before Barrett examined her. <u>See</u> <u>id.</u> at 22:1-16 (Gorence, Jane Doe).

## LAW REGARDING RULE 803(4)

Hearsay testimony is generally inadmissible. <u>See</u> Fed. R. Evid. 802. The Federal Rules of Evidence contain a number of exceptions, however, to the hearsay prohibition. <u>See</u> Fed. R. Evid. 803, 804. One of these exceptions, rule 803(4), makes admissible "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4).

### 1.      Rationale for the 803(4) Exception.

This exception is premised on the theory that a patient's statements to his or her physician are likely to be particularly reliable because the patient has a self-interested motive to be truthful. The patient knows that the efficacy of his or her medical treatment depends upon the accuracy of the information he or she provides to the doctor. <u>See</u> <u>United States v. Joe</u>, 8 F.3d 1488, 1493 (10th Cir. 1993), <u>cert.</u> <u>denied</u>, 510 U.S. 1184 (1994). Stated differently, "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." <u>White v. Illinois</u>, 502 U.S. 346, 356 (1992).

-4-

The selfish-treatment-interest rationale, therefore, supports the exception.  In United States

v. Joe, the Tenth Circuit stated:

> The Rule 803(4) exception to the hearsay rule is founded on a theory of reliability
> that emanates from the patient's own selfish motive -- her understanding "that the
> effectiveness of the treatment received will depend upon the accuracy of the
> information provided to the physician."  2 McCormick on Evidence § 277, at 246-47
> (John W. Strong ed., 4th ed. 1992).

United States v. Joe, 8 F.3d at 1493-94.  It is the patient's self-interest in furnishing accurate

information that provides the guarantee of trustworthiness which justifies exempting these out-of-

court statements from the general hearsay prohibition.  See White v. Illinois, 502 U.S. at 356 ("[A]

statement made in the course of procuring medical services, where the declarant knows that a false

statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a

trier of fact may not think replicated by courtroom testimony.").

In United States v. Joe, the Tenth Circuit observed that the United States Courts of Appeals

for the Fourth and Eighth Circuits have applied a two-part test to determine a statement's

admissibility under rule 803(4).  See 8 F.3d at 1494 n.5 (citing United States v. Renville, 779 F.2d

430, 436 (8th Cir. 1985)).  Under the first half of the test, "the declarant's motive in making the

statement must be consistent with the purposes of promoting treatment."  Id.  Second, "the content

of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis."

Id.

In United States v. White, 11 F.3d 1446 (8th Cir. 1993), the defendant was convicted of

sexually abusing his wife's two grandsons, R.H. and L.H., who were nine and seven years old,

respectively, at the time of the defendant's trial.  On appeal, the defendant argued that statements

which R.H. made to a social worker were not admissible under rule 803(4).  The Eighth Circuit

noted that, for the statements to be admissible under rule 803(4), the government "must show that

-5-

R.H. understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries." 11 F.3d at 1449.  The Eighth Circuit concluded: "[t]here is nothing in the record to suggest that R.H. appreciated that it was in his best interests to tell the truth and was therefore unlikely to lie."  11 F.3d at 1450.  "How [the social worker] explained her role and purpose to R.H., how she asked him questions, and how and where she conducted the interview are matters that can provide evidence 'that the child understood the physician's [or therapist's] role in order to trigger the motivation to provide truthful information.'"  Id. (quoting United States v. Barrett, 8 F.3d 1296, 1300 (8th Cir. 1993)).

The Eighth Circuit in United States v. White also relied on Ring v. Erickson, 983 F.2d 818 (8th Cir. 1992), a habeas case which held that the admission at trial, under Minn. R. Evid. 803(4), of out-of-court statements made by a three-year-old child, C.R., to a physician, violated the petitioner's confrontation rights.  Minn. R. Evid. 803(4) was identical to federal rule 803(4).  In so holding, the Eighth Circuit said:

> C.R.'s mother, not C.R., sought the "medical treatment," and there was no evidence suggesting that at the time of the interview C.R. even knew Dr. Levitt was a doctor. C.R. was three years old at the time.  The principal reason why 803(4) is a traditional hearsay exception automatically carrying the indicia-of-reliability label is because of the selfish-motive doctrine.  This exception is based on the belief that a person seeking medical treatment is unlikely to lie to a doctor she wants to treat her, since it is in her best interest to tell the truth.  White [v. Illinois], [502] U.S. at [354]-[58.] . . . .

983 F.2d at 820.  See People of Territory of Guam v. Ignacio, 10 F.3d 608, 613 n.3 (9th Cir. 1993) ("[W]hether a statement is admissible under the medical treatment exception does not depend solely on the intent of the questions, but also on whether the respondent understands herself to be providing information for purposes of medical treatment.").  In Morgan v. Foretich, 846 F.2d 941 (4th Cir. 1988), retired Associate Justice Lewis F. Powell Jr., sitting by designation on the United

States Court of Appeals for the Fourth Circuit, concurred in part and dissented in part, stating:

> [T]here is no evidence in the record that [the girl's] frame of mind was comparable
> to a patient seeking treatment. . . . [T]here is no evidence that Dr. Harrison ever
> explained to [the child] that his questions and relationship with her arose, at least in
> part, from a desire to treat her. . . .  Absent a finding that [the child] made her
> statements believing they would be used by Dr. Harrison to help her, I am reluctant
> to rest my decision on the cases relied on by the court.

Id. at 951-52.  See Oldsen v. People, 732 P.2d 1132, 1135-36 (Colo. 1986)(holding statements

inadmissible under Colo. R. Evid. 803(4) -- which was identical to the federal rule -- because there

was no evidence that the five-year-old child "was capable of recognizing, at the time the challenged

statements were made, the need to provide accurate information for purposes of medical diagnosis

or treatment within the meaning of CRE 803(4)").  The Supreme Court of Colorado in Oldsen v.

People held that the prosecution, as proponent of the hearsay statements, had the burden of

establishing the foundation for admitting them under an exception to the hearsay rule.  See 732 P.2d

at 1135 n.7.  The court in Oldsen v. People upheld the conviction, however, because the challenged

testimony was admitted properly on the alternative ground of being circumstantially trustworthy.

See id. at 1137.  But see United States v. George, 960 F.2d 97, 100 (9th Cir. 1992)("As a general

matter, the age of the child and her other personal characteristics go to the weight of the hearsay

statements rather than their admissibility.").  In State v. Robinson, 153 Ariz. 191, 735 P.2d 801

(1987), the Supreme Court of Arizona upheld the admission of statements under rule 803(4) of the

Arizona Rules of Evidence -- which also was identical to the federal rule -- concluding:

> The record is not clear regarding [the child's] motive in making the challenged
> statements.  The record does indicate, however, that [the] statements were elicited in
> the course of treatment.  And nothing in the record indicates that [the child
> victim's] motive in making these statements was other than as a patient seeking [or
> at least needing] treatment.

State v. Robinson, 153 Ariz. at 199, 735 P.2d at 809 (internal quotation marks and citations omitted).

## 2.      The Tenth Circuit's Test for Admissibility Under Rule 803(4).

"[T]he test for admissibility under rule 803(4) is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment."   United States v. Tome, 61 F.3d 1446, 1451 (10th Cir. 1995).   Accordingly, the Tenth Circuit has rejected the two-part test that the Fourth and the Eighth Circuits have used to evaluate evidence proffered under rule 803(4).  See United States v. Joe, 8 F.3d at 1494 n.5.  As the Tenth Circuit explained in United States v. Joe: "[T]he plain language of Rule 803(4) should guide us in determining the admissibility of statements made for purposes of medical diagnosis or treatment."  8 F.3d at 1494 n.5.  Moreover, because it follows the plain language of rule 803(4), the Tenth Circuit has rejected any presumptions against admission of hearsay evidence under the exception in the case of children.  See United States v. Edward J., 224 F.3d 1216, 1219 (10th Cir. 2000).

For a hearsay statement to be admissible under rule 803(4), the declarant need not have necessarily made the statement to a physician.  As the advisory committee's note to the rule explains, "[s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included."  Fed. R. Evid. 803(4) advisory committee's note.

## 3.      Identification of the Assailant in Sexual-Abuse Cases.

A declarant's statement to a physician that identifies the person responsible for the declarant's injuries is ordinarily inadmissible under rule 803(4) because the assailant's identity is usually unnecessary either for accurate diagnosis or effective treatment.  See United States v. Joe, 8 F.3d at 1494.  The Tenth Circuit held in United States v. Joe, however, that a hearsay statement revealing the identity of a sexual abuser who is a member of the victim's family or household "is admissible under rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes 'reasonably pertinent' to the victim's proper treatment."  8 F.3d at

1495.  In so holding, the Tenth Circuit reasoned:

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser.  The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household.  In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere.

Id. at 1494-95 (footnote omitted).  Although the victim in United States v. Joe was an adult, the Tenth Circuit stated that "the identity of the abuser is reasonably pertinent in virtually every domestic sexual assault case," including those in which the victim is a child.  Id. at 1494.  Thus, when a victim of domestic sexual abuse identifies her assailant to her physician, the physician's recounting of the identification is admissible under rule 803(4) when it is "reasonably pertinent" to the victim's treatment or diagnosis.  United States v. Joe, 8 F.3d at 1495.  See 2 J. Strong, McCormick on Evidence § 277, at 248 (4th ed. 1992).

In United States v. Tome, the defendant was convicted in the United States District Court for the District Court of New Mexico of sexual abuse of a child.  The Tenth Circuit originally affirmed, see 3 F.3d 342, 344 (10th Cir. 1993), and the defendant appealed.  The Supreme Court of the United States reversed and remanded to the Tenth Circuit.  See 513 U.S. 150, 167 (1995).  On remand, the Tenth Circuit held that the victim's statements to a caseworker and babysitter were not admissible under rule 803(4).

The relevant portions of the Tenth Circuit's decision on remand involve the testimony of Kae Ecklebarger of Colorado Springs Child Protection Services.  Ecklebarger, a caseworker, interviewed A.T. on August 29, 1990.  Ecklebarger testified that, during the interview, A.T. gave Ecklebarger a detailed account of the alleged abuse, at times using anatomically correct dolls to

demonstrate what had occurred.  See United States v. Tome, 61 F.3d at 1451.  Ecklebarger also

testified that A.T. alleged she had told her grandmother and aunt of the abuse.

The United States argued that Ecklebarger's testimony was admissible under either rule

803(4) and then-rule 803(24), the residual exception.  See United States v. Tome, 61 F.3d at 1451-

52.  The United States argued that A.T.'s statement to Ecklebarger was admissible, because the job

of a Child Protection Services caseworker "was equivalent to that of a doctor under Fed. R. Evid.

803(4)" and because A.T. understood that Ecklebarger's role was to "help kids."  United States v.

Tome, 61 F.3d at 1451.  The Tenth Circuit rejected the United States' proffer, noting:

> Ecklebarger neither diagnosed nor treated A.T.  She described her role as "the
> initial short-term investigat[or]."  Ecklebarger spoke to A.T. two times, after which
> "[t]he case was sent on to an ongoing protection worker."  Clearly, Ecklebarger did
> not treat A.T. in any way.
>
> Nor did Ecklebarger diagnose A.T.  Indeed, Ecklebarger referred the child
> to Dr. Kuper for a medical opinion regarding the allegations of abuse.  Moreover,
> Ecklebarger testified that she interviewed A.T. only to the extent necessary to make
> a decision whether a protective order was appropriate.  Because Ecklebarger did not
> diagnose or treat A.T., the child's statement to Ecklebarger could not have been for
> the "purpose[ ] of medical diagnosis or treatment," and thus was not properly
> admitted under Rule 803(4).

United States v. Tome, 61 F.3d at 1451 (alterations in original).

Ecklebarger testified that she interviewed A.T. only to the extent necessary to make a

decision whether a protective order was appropriate.  See id.  The Tenth Circuit stated that, because

Ecklebarger did not diagnose or treat A.T., the child's statement to Ecklebarger could not have been

for the "purpose[] of medical diagnosis or treatment," and thus was not properly admitted under rule

803(4).  United States v. Tome, 61 F.3d at 1451.

### TESTIMONIAL STATEMENTS UNDER CRAWFORD V. WASHINGTON

The framework for admissibility of out-of-court statements under the Confrontation Clause,

which the Supreme Court set forth in <u>Crawford v. Washington</u>, turns largely on whether the statement sought to be admitted is "testimonial."   A critical element in determining whether a statement is testimonial or non-testimonial "centers on the reasonable expectations of the declarant." <u>United States v. Summers</u>, 414 F.3d 1287, 1302 (10th Cir. 2005).  The Tenth Circuit has held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."  <u>United States v. Townley</u>, 472 F.3d 1267, 1272 (10th Cir. 2007)(quoting <u>United States v. Summers</u>, 414 F.3d at 1302).  Other Circuit Courts of Appeal are in accord.  <u>See</u> <u>United States v. Townley</u>, 472 F.3d at 1272 (citing <u>United States v. Hinton</u>, 423 F.3d 355, 360 (3d Cir. 2005); <u>United States v. Cromer</u>, 389 F.3d 662, 675 (6th Cir. 2004); <u>United States v. Saget</u>, 377 F.3d 223, 229 (2d Cir. 2004)).  More recently, in <u>United States v. Smalls</u>, 605 F.3d 765 (10th Cir. 2010), the Tenth Circuit discussed some shortcomings in its statement of the rule in <u>United States v. Summers</u>.  <u>See</u> <u>id.</u> at 777 ("Upon close inspection, <u>Summers</u>' definition of 'testimonial' appears somewhat in tension with <u>Davis[ v. Washington</u>, 547 U.S. 813 (2006)'s] strictures, and perhaps overly broad . . . .").  It proposed two potential definitions of a testimonial statement:

> [W]e might today formulate a definition of a testimonial statement which reads: a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution.  Or, to better conform to the current state of Tenth Circuit precedent, we might say: A formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime.

<u>United States v. Smalls</u>, 605 F.3d at 778 (proffering these potential tests, but holding "we need not now . . . tender a definitive definition of 'testimonial,' because Cook's statement is nontestimonial regardless of which of the foregoing definitions we apply.").

## ANALYSIS

The Court must determine whether to admit statements that the victim made to a physician's assistant in contemplation of, but not with the primary or sole intent to, use them in a future criminal proceeding.  The Court finds that the statements which Jane Doe made to Barrett are hearsay, as they were made out of court and will be used, at least in part, to prove the truth of the matters stated.  The United States argues that the statements fit the exception to the general hearsay prohibition found in rule 803(4) and that the Confrontation Clause does not prohibit the admission of the statements. Wilson argues to the contrary.

## I.      JANE DOE'S OUT-OF-COURT STATEMENTS TO BARRETT REGARDING THE ALLEGED ABUSE ARE ADMISSIBLE UNDER RULE 803(4).

Wilson's arguments regarding rule 803(4) demand close examination.  Generally, hearsay, which is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), is not admissible.  Rule 803(4) declares hearsay statements admissible if they are "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  Fed. R. Evid. 803(4).  In the Tenth Circuit, "the test for admissibility under rule 803(4) is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment."  United States v. Tome, 61 F.3d at 1451.  For a hearsay statement to be admissible under rule 803(4), the declarant need not have necessarily made the statement a physician.  As the advisory committee's note to the rule explains, "[s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included."  Fed. R. Evid. 803(4) advisory committee's note.

-12-

In <u>United States v. Tome</u>, the Tenth Circuit reasoned that the statements made by the victim to a social worker "could not have been for the 'purpose[] of medical diagnosis or treatment," although the precise formulation of the test that the Tenth Circuit articulated in its general discussion of the law in <u>United States v. Tome</u> is "whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment." <u>United States v. Tome</u>, 61 F.3d at 1451. In a more recent case, the Tenth Circuit has stated: "Treating professionals may relate statements made to them by the alleged victims, as long as the statements were made <u>for the purposes of diagnosis or treatment</u>. Such statements are admissible under Fed. R. Evid. 803(4), as exceptions to the hearsay rule, provided a proper foundation is laid." <u>United States v. Charley</u>, 189 F.3d 1251, 1263 n.14 (10th Cir. 1999)(emphasis added). On the surface, there appears to be two different formulas for testing the admissibility of statements under 803(4). One formulation asks whether "the subject matter of the statements is <u>reasonably pertinent</u> to diagnosis or treatment," <u>United States v. Tome</u>, 61 F.3d at 1451 (emphasis added), while another examines whether the statements "were made <u>for the purposes</u> of diagnosis or treatment," <u>United States v. Charley</u>, 189 F.3d at 1263 n.14 (emphasis added).

The key difference between the two formulations is that the first appears to be objective and to disregard any subjective inquiry into the reasons the declarant had for making the statements. The second, on the other hand, is framed in terms of the "purpose" of making the statements -- a subjective inquiry. Some tension thus appears to exist whether there is any subjective inquiry in the determination whether to admit evidence under 803(4). While the Tenth Circuit in <u>United States v. Tome</u> invoked the apparently objective standard, <u>see</u> 61 F.3d at 1451 ("[T]he test for admissibility under Rule 803(4) is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment."), it appears to have used the "purpose"-based rationale in its analysis, <u>see</u> 61 F.3d at 1451 (noting in its analysis that, because the caseworker "did not diagnose

or treat [the child], the child's statement . . . could not have been for the 'purpose[ ] of medical diagnosis or treatment,' and thus w[ere] not properly admitted under Rule 803(4)")(emphasis added).

A keyword search in Westlaw reveals twenty-three Tenth Circuit cases that discuss rule 803(4). In the oldest case, United States v. Farley, 992 F.2d 1122 (10th Cir. 1993), the Tenth Circuit discussed statements that a sex-abuse victim made to an examining physician, and stated: "Alternatively, these statements would be admissible under Fed. R. Evid. 803(4), which allows hearsay statements that were made 'for purposes of medical diagnosis and treatment.'" 992 F.2d at 1125. In an unpublished case from 1997, the Tenth Circuit upheld the admission of statements that an alleged sex-abuse victim made to a community-health representative and to a doctor who treated her on the grounds that the statements "were admissible as statements for purposes of medical diagnosis or treatment under Fed. R. Evid. 803(4)." United States v. Rosetta, 127 F.3d 1110 (Table), 1997 WL 651027, at *3 (10th Cir. Oct. 20, 1997)(emphasis added). In United States v. Nathan J., also decided in 1997, the Tenth Circuit discussed 803(4) in the following terms: "Rule 803(4) allows the admission of out-of-court statements made for the purposes of diagnosis and treatment and reasonably pertinent to diagnosis and treatment." United States v. Nathan J., 127 F.3d 1110 (Table), 1997 WL 659420, at *5 (10th Cir. Oct. 23, 1997)(emphasis added)(citing United States v. Tome, 61 F.3d at 1450; United States v. Joe, 8 F.3d at 1494-95).[3] See United States v.

---

[3] The Court notes that, in this unpublished case, the Tenth Circuit appears to demand the objective and subjective standards be met when it uses the conjunctive "and" in the cited passage. United States v. Nathan J., 127 F.3d 1110 (Table), 1997 WL 659420, at *5 (10th Cir. Oct. 23, 1997). The Court also notes, however, that the Tenth Circuit used the conjunctive "and" in the phrases "for the purposes of diagnosis and treatment," and "reasonably pertinent to diagnosis and treatment," United States v. Nathan J., 1997 WL 659420, at *5, whereas the rule uses the disjunctive phrase "diagnosis or treatment," see Fed. R. Evid. 803(4)("Statements made for purposes of medical diagnosis or treatment . . . insofar as reasonably pertinent to diagnosis or treatment.").

Norman T., 129 F.3d 1099, 1105 (10th Cir. 1997)(admitting statements by an alleged sex-abuse

victim to doctors and medical personnel at a hospital on the grounds that "Rule 803(4) provides an

exception to the hearsay rule for [s]tatements made for purposes of medical diagnosis or

treatment")(emphasis added); United States v. Pacheco, 154 F.3d 1236, 1240-41 (10th Cir. 1998)

(admitting identification that an alleged sex-abuse victim made to a doctor during a sexual-assault

examination under 803(4) and rejecting the contention that there is a presumption that 803(4) does

not apply to child-declarants).

Perhaps one way to understand the Tenth Circuit's multiple modes of discussing 803(4) is

to recognize that the Tenth Circuit sees both a subjective and an objective component in the rule

803(4) analysis.  United States v. Nathan, J. -- although an unpublished opinion -- offers the best

evidence of the existence of these two prongs in its statement that:

> Rule 803(4) allows the admission of out-of-court statements made for the purposes
> of diagnosis and treatment and reasonably pertinent to diagnosis and treatment.  See
> United States v. Tome, 61 F.3d 1446, 1450 (10th Cir. 1995)(discussing Rule 803(4)
> requirements); United States v. Joe, 8 F.3d 1488, 1494-95 (10th Cir. 1993)(same).
> Courts applying Rule 803(4) must often undertake case-specific, factual inquiries to
> determine the purpose of the out-of-court statements and their relationship to
> diagnosis or treatment.

United States v. Nathan, J., 1997 WL 659420, at *5 (emphasis added).  In other words, United States

v. Nathan, J. calls for two inquiries: (i) whether statements are made for the purposes of diagnosis

and treatment, a subjective inquiry; and (ii) whether the statements are reasonably pertinent -- i.e.,

have a relationship -- to diagnosis and treatment, an objective inquiry.  This analysis makes sense,

in light of the Tenth Circuit's recognition of the rationale behind 803(4), which, to at least some

degree, deals with the declarant's state of mind.  Furthermore, the full articulation of the test from

United States v. Nathan, J. seems to clarify why the Tenth Circuit kept out the statements made to

the caseworker in United States v. Tome -- because they were not for the purpose of medical

treatment or diagnosis, even if those statements might have been reasonably pertinent to diagnosis or treatment.  See 61 F.3d at 1451.

Viewed in this light, statements such as the ones made in United States v. Edward J. and in United States v. Norman T. can be viewed as being calculated to quell arguments that rule 803(4) should, as a matter of law, be applied more rigorously to children's statements.  Accordingly, those cases should not be viewed as disturbing the notion that there is a subjective as well as an objective inquiry into the admission of statements under rule 803(4).  The Court is also mindful that the Supreme Court has impressed the importance of care in the application of the hearsay exceptions in child sex-abuse cases.  In a caveat in the Supreme Court's opinion in Tome v. United States, 513 U.S. 150 (1995), Justice Kennedy stated:

> Courts must be sensitive to the difficulties attendant upon the prosecution of alleged child abusers.  In almost all cases a youth is the prosecution's only eye witness.  But "[t]his court cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases."  United States v. Salerno, 505 U.S. [317], [322], . . . (1992).

Tome v. United States, 513 U.S. at 166.

The Court is mindful that there is no presumption against applying the medical-treatment exception to a child's statements.  See United States v. Edward J., 224 F.3d at 1219-20.  It is also true that, because the Tenth Circuit rejects any such presumption, "the government ha[s] no burden here to show the girl[] understood the medical importance of telling the truth."  Id. at 220 n.3.  Even so, for the exception to apply within the Tenth Circuit, a good case can be made that  "[t]he out-of-court declarant must subjectively believe that the statement is being made in anticipation of treatment or diagnosis."  G. Weissenberger & A. Stephani, Federal Evidence: 2008 Courtroom Manual at 311 (Matthew Bender & Co. 2007).  After all, the plain language of the rule admits only "[s]tatements made for purposes" of diagnosis or treatment "insofar as reasonably pertinent to

diagnosis or treatment." Fed. R. Evid. 803(4). Indeed, language in some Tenth Circuit cases suggests that the subjective contemplation of treatment or diagnosis is "the significant foundational requirement which must be established to utilize the exception." Weissenberger & A. Stephani, supra at 311. The Tenth Circuit's statements in United States v. Nathan, J. further suggest that the Tenth Circuit has not dispensed with the subjective aspect of rule 803(4).

The Court believes its analysis is consistent with the Tenth Circuit's rejection of the Eighth Circuit's two-part-test and with the Tenth Circuit's reliance solely on the language of rule 803(4). While 803(4)'s language has an objective component -- "reasonably pertinent to diagnosis or treatment" -- the language also requires "[s]tatements made for purposes of medical diagnosis or treatment . . . ." Fed. R. Evid. 803(4). Also, the Court's analysis does not require, as the Eighth Circuit's test does, the declarant's motive to be "consistent with the purposes of promoting treatment." United States v. Joe, 8 F.3d at 1494 n.5. The Court asks only whether Jane Doe made the statements for the purpose of diagnosis or treatment, not whether she had the thought process that her statements should be helpful to be consistent with the goal of diagnosis and treatment. Moreover, the Court does not require the statement to be one on which a physician would rely -- the statement need be only "reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4). Thus, while the United States need not prove that Jane Doe understood the medical importance of telling the truth, it must make some showing that Jane Doe was making statements to Barrett "for purposes of medical diagnosis [or] treatment." United States v. Farley, 992 F.2d at 1125 (internal quotation marks omitted).

Wilson challenges the admissibility of Barrett's testimony reflecting Jane Doe's statements to Barrett during Barrett's examination of Jane Doe. As the Court understands Wilson's position, he is primarily challenging introduction of this evidence on the ground that Jane Doe did not have

the requisite subjective intent to justify application of the 803(4) exception.  The Court concludes that the United States has satisfied both the subjective and objective elements of the 803(4) exception.  First, the statements were "reasonably pertinent to diagnosis or treatment," because the content of the interview is relevant to diagnosing or treating sexually transmitted diseases or other sex-related injuries that Wilson might have inflicted on Jane Doe.

Second, the testimony that the Court took on June 21, 2010 indicates that Jane Doe had at least some subjective understanding that she was speaking to Barrett for the purposes of diagnosis or treatment.  Jane Doe testified that she knew Barrett was a nurse, see Tr. at 21:4-11 (Rozzoni, Jane Doe), and that she believed she was talking to Barrett because Barrett was concerned that Jane Doe might have "something in [her]," id. at 20:14-17 (Rozzoni, Jane Doe).  Moreover, while her mother testified that she took Jane Doe to the police before having her examined by Barrett, Jane Doe testified that she did not recall going to the police department, see Tr. at 22:1-16 (Gorence, Jane Doe), which indicates that the physical examination was the primary focus in her mind.  The Court thus concludes that, to the extent that there is a subjective-intent requirement for application of the rule 803(4) exception in the Tenth Circuit, the United States has met this requirement by providing sufficient evidence to establish that Jane Doe had a subjective appreciation of the fact that her statements to Barrett were being used, at least in part, for the purpose of diagnosis or treatment.

It is true that Frank knew that the examination probably would be used in the criminal investigation and prosecution of Wilson.  It is also a fair inference that Jane Doe knew that Wilson was in trouble and that what he did was wrong.  On the other hand, nothing in the language of the rule or in the case law requires that the statement be made solely for the purpose of diagnosis or treatment; it is sufficient if diagnosis or treatment is one of the purposes.  See Fed. R. Evid. 803(4) advisory committee's notes ("Conventional doctrine has excluded from the hearsay exception . . .

statements to a physician consulted only for the purpose of enabling him to testify.  The rule . . .

rejects the limitation.").

## II.    THE CONFRONTATION CLAUSE DOES NOT BAR JANE DOE'S OUT-OF-COURT STATEMENTS TO BARRETT IF JANE DOE TESTIFIES AT TRIAL.

Although Wilson makes an argument grounded on Crawford v. Washington, that opinion

resolves the issue he raised in favor of the United States.  It is true, as Wilson contends, that neither

he nor his counsel were present when Jane Doe made her statements to Barrett, and thus there was

no opportunity to cross-examine Jane Doe at the time that she made her out-of-court statements.

On the other hand, the Supreme Court addressed that concern in Crawford v. Washington when it

stated:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.  See California v. Green, 399 U.S. 149, 162 . . . (1970). . . .  The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

541 U.S. at 59 n.9.  The United States has represented to the Court that Jane Doe, the declarant of

the challenged out-of-court statement, will be present at trial to be cross-examined on her

statements.  Because Jane Doe will be present at trial, and because Wilson will have an opportunity

to cross-examine her and demand that she defend or explain her out-of-court statements, the

Confrontation Clause does not prohibit the United States from introducing that statements.

The United States argued in its motion that the statements made to Barrett were non-

testimonial and that therefore the Confrontation Clause does not prohibit their admission.  Under

recent Tenth Circuit authority, they may be correct.  Until May of this year, the Tenth Circuit

believed that "a statement [wa]s testimonial if a reasonable person in the position of the declarant

would objectively foresee that his statement might be used in the investigation or prosecution of a

crime." United States v. Townley, 472 F.3d at 1272 (quoting United States v. Summers, 414 F.3d at 1302). See United States v. Townley, 472 F.3d at 1272 (citing United States v. Hinton, 423 F.3d at 360; United States v. Cromer, 389 F.3d at 675; United States v. Saget, 377 F.3d at 229). Under this definition, the statements at issue may be testimonial. Although Jane Doe testified that she did not currently recall going to the police station before being examined by Barrett, Frank testified that she took Jane Doe to the police station first. See Tr. at 8:18-23 (Gorence, Frank). Frank also conveyed to Jane Doe that there would be a criminal investigation of Wilson. See id. at 7:9-13 (Rozzoni, Frank). On the other hand, a reasonable person in Jane Doe's position, even of Jane Doe's age at the time, likely would understand a connection between the visit to the police station and the examination by Barrett. It was probably reasonably foreseeable to Jane Doe that the statements made to Barrett might be used in the investigation or prosecution of a crime, and therefore qualify as testimonial.

The Tenth Circuit in United States v. Smalls, however, called into question some aspects of the definition of testimonial that it set down in United States v. Summers.[4] Specifically, the Tenth Circuit stated that a testimonial statement must be made in a "formal" context, although they were not specific about what that might mean. See United States v. Smalls, 605 F.3d at 777-78. Next, the Tenth Circuit specified that the United States v. Summers articulation ignored the statement's "primary purpose," and focused instead on the foreseeability to the declarant of the purposes to

---

[4] Because United States v. Smalls was not an en banc Tenth Circuit decision, it was not at liberty to overrule its prior decision in United States v. Summers. See Thompson R2-J Sch. Dist. v. Luke P., 540 F.3d 1143, 1150 n.6 (10th Cir. 2008)("[O]ne panel of this court cannot overrule the decision of a prior panel."). It did, however, indicate that some judges of the Tenth Circuit believe the rule set down in United States v. Summers is lacking and might be overruled in the future. See United States v. Smalls, 605 F.3d at 777 ("Upon close inspection, Summers' definition of 'testimonial' appears somewhat in tension with Davis[ v. Washington's] strictures, and perhaps overly broad . . . .").

which the statement "might" be put.  United States v. Smalls, 605 F.3d at 777-78.  With those two

clarifications, it declined to restate a precise definition of a testimonial statement, instead setting

forth two proposed definitions, either one of which it might adopt if the issue were put directly

before it.  See id. at 778 (stating that it "need not now resolve the apparent tension between Davis

and Summers").

Applying the alternative tests that the Tenth Circuit in United States v. Smalls proposed, the

statements are not testimonial.  If a testimonial statement is "a formal declaration made by the

declarant that, when objectively considered, indicates the primary purpose for which the declaration

was made was that of establishing or proving some fact potentially relevant to a criminal

prosecution," 605 F.3d at 778, the Court would likely not find that the statement is testimonial.  The

Court founds credible Frank's testimony that her primary concern when taking Jane Doe to the

authorities was to ensure that Jane Doe was healthy and not in serious immediate danger.  Jane Doe

understood that she was speaking to a nurse because there was some concern that she "ha[d]

something in [her]."  Tr. at 20:14-17 (Rozzoni, Jane Doe).  The Court finds that Jane Doe's primary

purpose for her statements was to diagnose a potential medical problem, not to establish or prove

some fact potentially relevant to a criminal prosecution.  While the Court is concerned about Frank's

motives for taking Jane Doe to Barrett, the Court believes that the United States has shown, by a

preponderance of the evidence, that her primary purpose was for diagnosis of her young daughter,

and not for the criminal prosecution.  More importantly, the United States has established by a

preponderance of the evidence that Jane Doe understood of the primary purpose for which she was

talking to Barrett was medical -- to determine whether "something [was] in [her]."  Tr. at 20:14-17

(Rozzoni, Jane Doe).  Under the first alternative definition, Jane Doe's statement would not be

testimonial.[5]

The statement is likewise non-testimonial if a testimonial statement is "[a] formal statement [which] a reasonable person in the position of the declarant would objectively foresee that the primary purpose of [which] statement [is] for use in the investigation or prosecution of a crime." United States v. Smalls, 605 F.3d at 778.  Although this articulation is awkward -- it demands the Court to discern the declarant's understanding of the primary purpose for which the person to whom he or she made the statement will put the statement, and whether that understanding is objectively reasonable -- it counsels that Jane Doe's statement was non-testimonial.  While Frank told Jane Doe that, "if [the situation] were to go to trial, that [the statements to Barrett] would be used for that," Tr. at 7:9-13 (Rozzoni, Frank), Frank first told her that the interview was "[t]o make sure [she was] okay," id.  Moreover, Jane Doe knew that she was talking to a nurse and that the interview was happening because there was a concern that there was "something in [her]."  Id. at 20:14-17 (Rozzoni, Jane Doe).  A ten-year-old girl speaking to a nurse under those circumstances would be unlikely to predict that the "primary purpose" for which the nurse was taking the statement was to "investigat[e] or prosecut[e] a crime."  United States v. Smalls, 605 F.3d at 778.  It is also likely that her subjective understanding was objectively reasonable.

While the analysis in United States v. Summers points to the conclusion that Jane Doe's statements to Barrett are testimonial, the Tenth Circuit's recent opinion in United States v. Smalls

---

[5] The investigative interview with Barrett probably satisfies the requirement that the declaration be "formal."  As the Tenth Circuit stated in United States v. Smalls, "the Court recognized 'that *formality is indeed essential to testimonial utterance*,' but not a 'high degree' of such."  605 F.3d at 777.  Barrett's interview with Jane Doe likely had at least the same degree of formality as an initial investigatory questioning that a police officer might make to a witness at the scene of a crime.  The question will instead turn on the primary-purpose aspect of a testimonial statement under the Tenth Circuit's recent re-articulation of that doctrine.

suggests that her statements are not testimonial.  In any case, the Court concludes that it need not and should not resolve whether the statement is testimonial.  See United States v. Martinez, No. CR 09-2439 JB, 2010 WL 965521, at *26 n.19 (D.N.M. Feb. 25, 2010) (Browning, J.)("Federal courts are to avoid rendering decisions on constitutional questions unless reasonably necessary.")(citing Nw. Austin Mun. Util. No. One v. Holder, 129 S. Ct. 2504, 2508 (2009)(Roberts, C.J.)("Our usual practice is to avoid the unnecessary resolution of constitutional questions."); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1267 n.7 (10th Cir. 2004) ("Our usual practice is to avoid the unnecessary resolution of constitutional questions."); United States v. Hardman, 297 F.3d 1116, 1135-36 (10th Cir. 2002)(expressly reaching its conclusion on statutory grounds "to avoid constitutional issues.")).  The United States has represented that Jane Doe will testify at trial, and the Confrontation Clause will not bar admission of the statements, even if they are testimonial, so long as Wilson has an opportunity to cross-examine Jane Doe regarding them.  The Court has no reason to believe that the United States will not be true to that representation.  So long as the United States remains true to that representation and Jane Doe testifies, there is no constitutional reason to prohibit admission of the statements.

In sum, it appears that the requirements of the 803(4) exception are met.  The United States seeks to admit out-of-court statements taken by Barrett, a physician's assistant, that were given at least in part for the purpose of seeking diagnosis or treatment, and the information given had a reasonable relationship to diagnosis or treatment.  Moreover, the Confrontation Clause does not bar the statements to which Barrett will testify, because Jane Doe will be present at trial for cross-examination.  The Court will therefore grant the United States' motion *in limine* and find that Jane Doe's statements to Barrett are admissible.

**IT IS ORDERED** that the United States' Motion *in Limine* to Permit Testimony from

Medical Provider Regarding Victim's Statement Pursuant to Fed. R. Evid. 803(4) is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Jack E. Burkhead
Jennifer M. Rozzoni
   Assistant United States Attorneys
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Robert J. Gorence
Louren Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

       *Attorneys for the Defendant*